# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ANGELA R. TUNINK, :

    Plaintiff, :

vs. : CA 11-0306-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
    :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 16 & 18 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the December 16, 2011 hearing before the Magistrate Judge, it is

determined that the Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to bipolar disorder, depression, and anxiety. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.**
>
> **2. The claimant has not engaged in substantial gainful activity since September 18, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).**
>
> **3. The claimant has the following severe impairments: bipolar disorder, depression and anxiety (20 CFR 404.1520(c)).**
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**
>
> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 16 & 18 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

In activities of daily living, the claimant has mild restriction. The claimant cares for both her children, takes her youngest to and from school, watches television, washes clothes, prepares some meals, does the laundry, loads the dishwasher, drives and shops.

In social functioning, the claimant has moderate difficulties. She stated that she has difficulty getting along with others.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. She complained of difficulty with concentration, following instructions and completing tasks.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. There is no evidence in the record that the claimant had experienced episodes of such severity.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant has not had repeated episodes of decompensation, each of extended duration. She does not have a residual disease process that has resulted in such marginal adjustment that even minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate. She does not have a current history of 1 or more year's inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work involving only simple and repetitive instructions and tasks within 2 hour intervals and minimal general public contact with no production pace.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

. . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

. . .

The undersigned finds that the record supports the residual functional capacity as stated previously. No weight is given to the severity of limitations as stated by Dr. Hanak. Dr. Hanak reported the claimant's limitations, listed previously, are moderate to extreme. The record simply does not support her opinion. On some occasions, Dr. Hanak stated that the claimant's issues were with either her sons or her husband and that she was doing okay on her medications. Furthermore, Dr. Hanak indicated in Exhibit 7F that the claimant had had this condition since age 18 and also noted that the claimant had held full time jobs in the past. Finally, the undersigned notes that the claimant was able to go for several months without treatment and was maintained on her medications without decompensation in her functioning. She was able to carry out her daily activities and take care of her family and children. Therefore, Dr. Hanak's opinions regarding the level of severity of the claimant's impairment is given no weight as it conflicts with the fact that the claimant was capable of holding full time jobs in the past with the same limitations.

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

.   .   .

**7.     The claimant was born on June 2, 1970 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).**

**8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).**

**9.     Transferability of job skills is not an issue in this case because claimant's past relevant work is unskilled (20 CFR 404.1568).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If

the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as janitor/custodian, DOT #381.687-018 with 1.4 million jobs in existence in the national economy and 22,000 statewide; kitchen worker, DOT #318.687-010 with 850,000 jobs in existence in the national economy and 6,500 statewide[;] and hand packager, DOT #920.587-018 with 800,000 jobs in existence in the national economy and 3,500 statewide.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the record as a whole, to include the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**11.  The claimant has not been under a disability, as defined in the Social Security Act, from September 18, 2008 through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 14-16, 16, 18, & 18-19.) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

**DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that, within the framework of the grids, she can perform those jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole,

taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

In this case, the plaintiff contends that the ALJ erred in failing to give significant weight to the opinion of her treating psychiatrist and instead relying upon the mental residual functional capacity assessment completed by a non-examining agency psychologist. (*See* Doc. 12.)

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given her age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted). Stated differently, the burden is on the Commissioner at the fifth step of the sequential evaluation process to establish capacity to perform other work and thereby to establish the claimant's residual functional capacity. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

This Court has held on numerous occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence or, where available, by the residual functional capacity assessment of a non-examining, reviewing physician;[3] instead, this

---

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[3] The opinion of a non-examining, reviewing physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990).

8

fifth-step burden must be supported by the residual functional capacity assessment of a treating or examining physician. *See, e.g., Cosey v. Astrue*, 2008 WL 2561585, *3 (S.D. Ala. June 25, 2008). Such an assessment particularly is warranted where, as here, the ALJ has given absolutely no weight to the mental residual functional capacity assessments completed by plaintiff's treating psychiatrist, Dr. Pamela Hanak. While the ALJ admittedly has the responsibility of determining a claimant's RFC, there must be substantial support in the record for that determination and it has always been the view of this Court, and will continue to be the view of this Court, that substantial evidence in support of such RFC determination necessarily must include an RFC assessment by a treating or examining physician. Without such evidence, all this Court perceives is mere "conjecture and intuition" by the ALJ regarding what plaintiff's impairments equate to in terms of limitations in her mental ability to perform work, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting[.]" *See* 20 C.F.R. § 404.1545(c) (2011). Of course, this Court does not so much perceive conjecture and intuition in this case as it does an attempt by the ALJ to be evasive about the evidence from which she derived her RFC assessment. It is clear, however, to the undersigned that even though the ALJ did not once directly mention in her decision the RFC assessment completed by the non-examining, reviewing psychologist, Dr. Linda Duke, or state the weight she was according same, as is her charge in accordance with the Commissioner's regulations, *compare* Tr. 16 ("The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 [in making

9

the residual functional capacity finding.]") *with* 20 C.F.R. § 404.1527(f) ("We consider all evidence from nonexamining sources to be opinion evidence. When we consider the opinions of nonexamining sources, we apply the rules in paragraphs (a) through (e) of this section[, paragraph (d) specifically describing how medical opinions are weighed]."), Duke's assessment was accorded great weight as the ALJ's RFC assessment (Tr. 15 ("**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work involving only simple and repetitive instructions and tasks within 2 hour intervals and minimal general public contact with no production pace.**")) is all but a mirror image of the RFC assessment rendered by Dr. Duke (*compare id. with* Tr. 187 ("The claimant has the ability to understand, remember and carry out short and simple instructions and has the ability to carry out such instructions w/in 2 hr intervals. . . . The claimant's contact with the general public should be minimal.")).[4] Moreover, Dr. Duke's assessment formed the basis for the vocational expert's identification of other jobs in the national economy plaintiff can allegedly perform. (*Compare* Tr. 19 ("[T]he

---

[4] Indeed, the ALJ relied upon the Psychiatric Review Technique form completed by Duke in determining that plaintiff's mental impairments do not meet or equal the criteria set forth in Listings 12.04 or 12.06. (*Compare* Tr. 15 (ALJ's findings that plaintiff has a mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, of extended duration) *with* Tr. 181 (Duke's findings that plaintiff has a mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, of extended duration).)

Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as janitor/custodian, DOT #381.687-018 with 1.4 million jobs in existence in the national economy and 22,000 statewide; kitchen worker, DOT #318.687-010 with 85,000 jobs in existence in the national economy and 6,500 statewide[;] and hand packager, DOT #920.587-018 with 800,000 jobs in existence in the national economy and 3,500 statewide.") *with* Tr. 37-38 ("I'd like you to assume an individual of the same age and educational background as the Claimant with the same work history. I'd like you to further assume that this hypothetical individual does not have any physical limitations, anything that would prevent the individual from performing work. However, this individual does have limitations, and I'd like you to look at Exhibit 5F, page three. This individual would have limitations in that their (sic) ***ability to understand, remember, and carry out short and simple instructions would be limited to that[] they could carry out within two-hour intervals. However contact with the general public should be minimal***, and I'd like you to add to that that they (sic) should not have to work at a production . . . pace so as not to, I guess, exacerbate any kind of a stressful situation[.]") *and* Tr. 38 & 39 (VE's identification of jobs as a janitor/custodian, kitchen worker, and hand packager as representative work of what the hypothetical individual can perform). Thus, it is clear that without Duke's assessment, there is nothing in the record which provides substantial support for the ALJ's RFC assessment

and since, as aforesaid, an assessment by a non-examining, reviewing physician does not itself constitute substantial evidence to support an administrative decision, *Swindle, supra,* 914 F.2d at 226 n.3, this cause must be remanded to the Commissioner for further consideration at the fifth step of the sequential evaluation process.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 27th day of December, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**